HALL, Judge.
The Superior Oil Company (“Superior”) and The Pure Oil Company (“Pure”) filed this suit on September 29, 1964, each plaintiff seeking to recover the sum of $116,-966.24 from Humble Oil & Refining Company (“Humble”) in connection with the drilling of an oil and gas well in Acadia Parish, Louisiana. The California Company, whose name was subsequently changed to California Oil Company and then to Chevron Oil Company (referred to herein as “California”), was joined as a party defendant on plaintiff’s allegation that “it has an interest in the outcome of this litigation.”
*567 Subsequent pleadings disclose that after suit was filed Pure was merged with Union Oil Company of California. The latter company was substituted as a party plaintiff and thereafter dismissed its suit on the ground that insofar as it was concerned “the above matter has been settled in full.”
The claim has thus been reduced to the sum of $116,966.24 which Superior seeks from Humble; California being present herein as having “an interest in the outcome of this litigation.”
Both Humble and California filed de-clinatory exceptions:
1) To the jurisdiction of the Court over the person of exceptor and over the subject matter.
2) To the venue of the action,
and with reservation of the foregoing de-clinatory exceptions, both defendants filed a dilatory exception of prematurity.
Humble and California then propounded “Requests for Admissions of Facts and Genuineness of Documents” solely for the purpose of establishing the truth of certain facts and the genuineness of certain documents for use in the trial of the exceptions. Superior admitted all of the Requests and although they objected to some of the Requests on the ground of irrelevancy they admitted the truth thereof.
Following argument on the exceptions the Trial Judge maintained the exceptions of lack of jurisdiction over the subject matter and the exceptions of prematurity and dismissed plaintiff’s suit at its cost. Plaintiff, Superior, prosecutes this appeal from that judgment.
Briefly stated plaintiff’s petition shows that on June 2, 1960, Superior, Pure, Humble and California entered into a Joint Operating Contract for the exploration for and production of oil and gas from certain lands situated in Acadia Parish and that Humble was therein designated as the operator; that contemporaneously with the execution of the Joint Operating Contract a supplemental letter agreement was entered into between the parties; that “pursuant to said supplement agreement” Humble drilled and completed the well “therein provided for” as a producer of gas at a cost of $642,848.26 of which sum Superior and Pure each paid 31.25% or $200,-890.08 in accordance with the proportions set forth in the Joint Operating Contract; that further pursuant to said supplemental letter agreement the Louisiana Department of Conservation created a unit around said well and it was determined that the percentage of production from said well allo-cable to Superior and Pure on a surface acreage basis was 13.055% to each; that in conformity with the supplemental letter agreement the cost of drilling, completing and equipping the well should be adjusted so as to be borne in the same percentage; that therefore Superior and Pure are each entitled to reimbursement from Humble of the difference between 31.25% of the total cost of drilling the well and 13.055% thereof or the sum of $116,966.24 each.
From the allegations of the petition and the Admissions in response to the Request For Admissions the factual situation out of which this action arises is as follows:
On June 2, 1960, Superior, Pure, Humble and California entered into a Joint Operating Contract for the drilling by Humble, as operator, of a certain oil and gas well. Contemporaneously therewith the parties entered into a Letter Agreement which will be referred to hereinafter. Humble drilled the well to a total depth of 12,991 feet at a total cost of $642,846.26. The cost of drilling the well was advanced by Humble and Superior reimbursed Humble 31.25% of such costs monthly as its share thereof as fixed by the operating agreement. The costs reimbursed by Superior amounted to a total of $200,890.98.
In drilling the well to its total depth of 12,991 feet seven sands were encountered *568 all of them being unproductive except the Marg. 1-A sand which lay between 8663' and 8675' and the Frio 6 sand which lay between 9606' and 9620'. Tests run on the Frio 6 sand made on December 1, 1960 produced condensate and gas; tests made on the Marg. 1-A sand on December 28, 1960 also produced condensate and gas.
After testing, the shallower Marg. 1-A sand was sealed off on January 2, 1961 and the well was completed in the deeper Frio 6 sand on January 4, 1961.
The Louisiana Conservation Department created a pooled unit for production of the well from the deeper Frio 6 sand by order effective December 1, 1962. Under the terms of said order Superior was entitled to share in the production therefrom on a surface acreage basis which was shown by the unit maps to entitle Superior to a participation of 13.055% of the Frio 6 sand unit production. Superior thereupon demanded reimbursement from Humble of the difference between 31.25% of the total well costs ($200,890.98) which it had paid, and 13.055% of the total well costs ($84,-923.84) or a return of $116,966.24 which is the amount for which it has sued.
The above was the factual situation on September 29, 1964, the date the suit was filed. As of that date no unit had been formed for production of the well from the shallower Marg. 1-A sand and no supplement to the Joint Operating Contract had been executed by the parties for the operation of either the Frio 6 sand or the Marg. 1-A sand.
After suit was filed, viz. on December 20, 1965 the well ceased to produce from the Frio 6 sand and on August 13, 1966 the well was recompleted in the shallower Marg. 1-A sand, and on November 9, 1966 the Commissioner of Conservation established a unit for production from that sand, which had been encountered, tested and sealed off in the original drilling of the well. By supplemental order dated June 27, 1967 a formula was established by the Commissioner for the participation in the production from that unit area.
The Letter Agreement which was entered into by the parties on June 2, 1960 contemporaneously with the execution of the Joint Operating Agreement reads in all pertinent parts as follows:
“It has been agreed by you that Humble Oil & Refining Company will drill a well for the account of the parties hereto the depth of 13,000 feet unless an impenetrable formation is encountered at a lesser depth at a location approximately 400 feet south and east from the northwest corner of the Superior-Pure Lease. The cost of drilling this well and completing and equipping the same if it is a producer, or plugging and abandoning the same if it is a dry hole shall be determined in accordance with the Accounting Procedure attached to said Joint Operating Contract. Such cost and expense will be currently borne by the parties in accordance with the proportions set forth in said operating agreement.
“If the well is completed as a producer of gas an application for the creation of a unit around it will be made as soon as practical by Humble to the Louisiana Department of Conservation. It is agreed that prior to the filing of such application Humble will consult Superior, Pure and California relative thereto. In the event a unit is created around said well by the Department of Conservation the parties shall execute a supplement to the operating agreement referred to above, which supplemental agreement shall embrace the area included within said unit and shall apply only to the formation covered by the applicable Department of Conservation order. The supplemental agreement will provide that the area embraced by the same shall be operated under the applicable terms and provisions of the operating agreement identified above, which prior agreement shall be *569 superseded for operating purposes only as to the formation covered by the Department of Conservation order. All production obtained from any such unit shall be owned by the parties in proportion to their ownership thereof on a surface acre basis and the cost and expense of drilling, completing and equipping said well shall be adjusted so that they will be borne in the same proportions. The costs of operating well shall be borne in the same manner. The parties recognize that more than one gas sand may be encountered in and under the joint area and in such event respective units for each such sand would be created. Therefore, it is agreed that the provisions of this paragraph shall apply with respect to each gas sand or reservoir so encountered and with respect to each unit which may be created with respect to each such sand or reservoir and shall equally apply with respect to any and all revisions of any such unit or units.”
Superior contends that the entire cost of drilling the well to 12,991' ($642,846.26) should be allocated to the unit established by the Conservation Commission for production from the Frio 6 sand lying between 9606' and 9620', and that pursuant to the covering lettering of June 2, 1960 the entire cost of the well should be adjusted so that each party should bear only that percentage of the $642,846.28 which the surface acreage owned by it bears to the surface acreage of the Frio 6 unit as established by the Conservation Department.
Humble and California contend that the total costs of drilling the 12,991' well should be allocated and apportioned between: (a) the upper Marg. 1-A sand unit at 8663-8675 feet subsurface, (b) the Frio 6 sand unit at 9606-9620 feet subsurface, and (c) the non-productive dry hole deep interval at 9621-12,991 feet subsurface. They contend that the Conservation Commissioner is the proper party to determine the proportion of drilling costs attributable to each of the two unitized sands (a) and (b), and that after those costs have been determined and allocated by him such costs would be paid on a surface acreage participation factor in each of the two units in accordance with the Letter Agreement. They further contend that the remaining costs would be attributable to the dry hole interval (c) and be paid by the parties in accordance with the proportions fixed in the Joint Operating Agreement.
The defendants’ exceptions to the jurisdiction of the Court over the subject matter and their exceptions to the venue of this action are based on the contention that this action involves a dispute over the cost of development and operation of a pooled unit established by the Commissioner of Conservation and the Commissioner has primary jurisdiction over the matter involved subject to judicial review by the District Court of the Parish of East Baton Rouge (the principal office of the Commissioner) all as provided in LSA-R.S. 30:1 et seq.
Defendants’ exceptions of prematurity are based on the following contentions:
a) The plaintiff, Superior, has not exhausted its administrative remedies before the Commissioner of Conservation.
b) That the Letter Agreement of July 2, 1960 contemplates and provides for the creation by the Department of Conservation of a pooled unit with respect to each gas sand encountered in the drilling of the well, and for the execution by the parties of a supplemental agreement for each such gas sand encountered; that two gas sands were encountered but no pooled unit was formed by the Conservation Department for the Marg. 1-A sand prior to the filing of this suit and therefore this action is premature in attempting to fix the shares of the respective parties of the drilling, completing and equipping costs allocable to the Frio 6 *570 sand in advance of the pooling and unitization by the Commissioner of Conservation of the Marg. 1-A sand encountered in the drilling of said well.
The Commissioner’s jurisdiction to adjudicate matters involving cost disputes is set forth in LSA-R.S. 30:10(A) (1) (c) which reads as follows:
“(c) In the event pooling is required, the cost of development and operation of the pooled unit chargeable by the operator to the other interested owners shall be limited to the actual reasonable expenditures required for that purpose, including a charge for supervision. In the event of a dispute relative to these costs, the commissioner shall determine the proper costs, after notice to all interested persons and a hearing.”
His determination of such costs amounts to no more than a finding of fact which finding is reviewable under LSA-R.S. 30:12 by the District Court of East Baton Rouge Parish. The Commissioner has no jurisdiction to decide disputes such as the one before the Court. Even if, prior to the filing of this suit, the Commissioner had made a factual determination of the costs attributable to the Frio 6 and Marg. 1-A units and such finding had been affirmed by the District Court of East Baton Rouge Parish the dispute between the parties would not have been resolved thereby and this or a similar suit would have had to be filed in order to resolve it.
We are therefore of the opinion that the Commissioner of Conservation has no jurisdiction primary or otherwise to determine this controversy which involves a contractual dispute between the parties and that the District Court erred in maintaining defendants’ exceptions of lack of jurisdiction over the subject matter.
The Letter Agreement of June 2, 1960 contemplates that if a well is completed as a producer of gas a pooled unit will be created around it by the Department of Conservation and that the parties will then execute a supplement to the Operating Agreement which shall embrace the pooled unit only and that the prior Operating Agreement shall be superseded for operating purposes only as to the formation covered by the pooled unit. The Letter Agreement goes on to say that “the cost and expense of drilling, completing and equipping said well shall be adjusted so that they will be borne” by the parties on a surface acre basis and that the costs of operating the well shall be borne in the same manner. The Letter Agreement then goes on to say:
“ * * * The parties recognize that more than one gas sand may be encountered in and under the joint area and in such event respective units for each such sand would be created. Therefore, it is agreed that the provisions of this paragraph shall apply with respect to each gas sand or reservoir so encountered and with respect to each unit which may be created with respect to each such sand or reservoir and shall equally apply with respect to any and all revisions of any such unit or units.”
As we have seen two productive sands were encountered as the well was drilled. Therefore the parties contemplated the pooling or unitization by the Commissioner of both such sands and that the cost and expense of drilling, completing and equipping the well as to each of said units would be adjusted on the basis of surface acreage participation in each of said units.
The correspondence which passed between the parties after the Frio 6 sand had been unitized but before this suit was filed shows that the parties could not agree on how much of the total well cost should be allocated to the Frio 6 unit even if this had been the only unit which they had contemplated forming. The resolution of this dispute was a matter exclusively within the jurisdiction of the Department of *571 Conservation but the Department was not called upon to resolve it.
Moreover the Letter Agreement does not provide for attributing total well cost to the Frio 6 sand alone as Superior urges. It plainly contemplates that the proportion of total costs applicable respectively to each gas sand encountered must first be determined before those respective costs can be allocated to the parties on their surface acre holdings in each unit. As a matter of fact their surface acre holdings differ as to each of the units.
A money judgment cannot be rendered in favor of Superior until the proportion of total well costs applicable to each of the two units is determined. The Court cannot make a factual determination of these costs since that is a matter within the exclusive jurisdiction of the Department of Conservation.
Superior contends that this case presents a matter purely of contract interpretation but Superior does not seek a declaratory judgment. It seeks a money judgment, and if this suit went to trial in its present condition the Trial Judge would sooner or later be faced with the necessity of fixing the proportion of total well costs applicable to each of the two sands encountered. Since the fixing of these costs is within the exclusive jurisdiction of the Department of Conservation he would be obliged to halt the trial and refer this factual matter to the Department.
We are of the opinion that the determination of the amount of the total well costs attributable to the Frio 6 unit and the Marg. 1-A unit is a sine qua non for the rendition of any monetary judgment herein. These costs cannot be fixed by the Court but must be determined by the Commissioner of Conservation.
We are therefore of the opinion that the Trial Judge correctly maintained the exceptions of prematurity because:
a) Plaintiff has not obtained a determination by the Department of Conservation of the well costs attributable to the Frio 6 sand unit;
b) prior to the filing of suit no unit had been formed for production from the Marg. 1-A sand which had been encountered and tested as productive of gas and condensate and sealed off during the initial drilling of the well;
c) as of the date this suit was filed no unit had been created for the Marg. 1-A sand, consequently the surface acreage in the unit was unknown and the parties were not in a position to allocate well costs attributable to that sand.
For the foregoing reasons the judgment appealed from is reversed insofar as it maintained defendants’ exceptions to the jurisdiction of the Court over the subject matter and is affirmed insofar as it maintained defendants’ exceptions of prematurity and the judgment is recast so as to read as follows:
“It is ordered, adjudged and decreed that the exceptions to the jurisdiction of the Court over the subject matter of this suit herein filed by Humble Oil & Refining Company and by Chevron Oil Company (formerly The California Company) be and the same are hereby overruled.
“It is further ordered, adjudged and decreed that the exceptions of prematurity herein filed by Humble Oil & Refining Company and Chevron Oil Company (formerly The California Company) be and the same are hereby maintained and the suit of the plaintiff, Superior Oil Company, be and it is hereby dismissed without prejudice at plaintiff’s cost.”
Costs of this appeal shall be borne by appellant and appellees in equal proportions.
Judgment reversed in part, affirmed in part and recast.