277 So.2d 218 (1973)
Lovic C. DESORMEAUX, Plaintiff-Appellant,
v.
INEXCO OIL COMPANY, Defendant-Appellee.
No. 4057.
Court of Appeal of Louisiana, Third Circuit.
April 25, 1973.
Rehearing Denied May 24, 1973.
*219 Pugh, Buatt, Landry & Pugh by J. W. Landry, Jr., Crowley, for plaintiff-appellant.
Bailey & Hollier by George J. Bailey, Lafayette, for defendant-appellee.
Before FRUGE, HOOD, and DOMENGEAUX, JJ.
FRUGE, Judge.
Plaintiff-appellant Desormeaux appeals from a judgment dismissing his action for an accounting and for a declaratory judgment. The trial court sustained defendant-appellee's, Inexco Oil Company, exceptions of prematurity, improper venue, and lack of jurisdiction over the subject matter. We reverse.
On February 16, 1968, Desormeaux executed a mineral lease to Kerr-McGee Corporation on several tracts of land in Acadia Parish. Inexco Oil Company later acquired ownership of the lessee's rights under the lease. On September 20, 1970, Inexco completed drilling a well on one of the tracts of land covered by the lease. The well has produced since that time. Effective June 30, 1971, 13.370 acres belonging to Desormeaux were unitized with part of the leased acreage. This acreage was not under lease. Mr. Desormeaux thus owns all of the land in the unit. Approximately 13 acres of the unit are not under lease, and the rest of the unit is leased to Inexco.
This case arose from a dispute as to "the method of calculating the amount due petitioner from the production from said well attributable" to the 13 unleased acres. Inexco contends that this is solely a cost dispute which is within the exclusive jurisdiction of the Commissioner of Conservation. Desormeaux, on the other hand, contends that the courts have jurisdiction because this is solely an action for an accounting.
Neither contention is absolutely correct. There is no basis whatsoever for Inexco's *220 contention. Although an accounting is part of Desormeaux's demand, he also seeks a declaration of the respective rights of the parties. The dispute which Desormeaux seeks to have resolved by declaratory judgment involves two legal issues.
The first legal issue involved arises from Desormeaux's primary contention[1] that he is entitled to a proportionate part of the production attributable to the unleased acreage from the date of first production, subject to payment of his prorata cost of drilling, completing and operating the well. This is an issue which should be and has been in the past decided by the courts. Because of the rule of capture, a landowner is ordinarily not entitled to claim payment for oil drained from his property before a unitization. However, this is not a case of one landowner's lessee draining another landowner's tract. The question which plaintiff's main demand presents is whether the rule of capture applies between a landowner and his lessee.
The plaintiff's alternative demand is that he is entitled to his prorata share of production from the date of the formation of the unit free of the payment of any of the costs of drilling and completing the well since these costs had already been recovered by Inexco Oil Company. Ownership of pooled or unitized land or mineral interest gives each participant a right to a prorata share of the oil, gas, and minerals produced, coupled with the correlative obligation of paying a like percentage of drilling and operating costs. General Gas Corporation v. Continental Oil Company, 230 So.2d 906 (La.App. 1st Cir., 1970). However, this is not a case of one landowner asking for a share of production in a unitized well drilled upon another landowner's tract. Under the particular lease executed, Inexco obligated itself to pay the cost of the well out of its 4/5th's working interest. Desormeaux's second contention raises the question of the effect of the unitization on this contractual obligation.
We discuss these issues here only to refute Inexco's contention that this is solely a cost dispute. Plaintiff Desormeaux's right to an accounting is established by Anisman v. Stanolind Oil and Gas Company, 98 So.2d 603 (La.App.2nd Cir., 1957) and R.S. 30:103 et seq.
After careful reading of LSA-R.S. 30:10, subd. A(1)(c), we conclude that the statute contemplates a situation where there is a dispute as to the actual specific costs sought to be charged to the non-operator, that is, whether the costs sought to be charged by the operator are reasonable or necessary expenditures. When the statute states that "the commissioner shall determine the proper costs" it is obviously referring to the cost of development and operation *221 of the pool unit and the reasonableness thereof. Therefore, the Commissioner only has the fact-finding authority to determine the amount of reasonable and proper costs. He has no authority to determine how costs are to be apportioned or what effect his orders have on pre-existing contractual or legal relationships. Monsanto Chemical Company v. Southern Natural Gas Company, 234 La. 939, 102 So.2d 223 (1958); O'Meara v. Union Oil Company of California, 212 La. 745, 33 So.2d 506 (1947); Anisman v. Stanolind Oil and Gas Company, 98 So.2d 603 (La.App.2nd Cir., 1957).
A reading of plaintiff's petition indicates no quarrel as to the cost of developing and operating the unit well. He alleges that the costs of drilling and completing the well have been recovered and the petition does not raise the question of the amount of the costs or whether or not the costs which defendant seeks to charge plaintiff is correct.
Neither is this an attack upon the order of the Commission. This court need not make any determination as to the validity of any order of the Commissioner. In effect, the plaintiff actually admits the validity of the order issued by the Commission. Vincent v. Hunt, 221 So.2d 577 (La.App.3rd Cir., 1969) is therefore not applicable to this case.
This case is controlled by Superior Oil Co. v. Humble Oil & Refining Co. and the California Co., 226 So.2d 565 (La.App.4th Cir., 1969), wherein the parties were involved in a dispute over the allocation of well costs to each participating party. The parties had agreed in a joint operating agreement to share the costs on a certain percentage basis. The well was drilled to 12,991 feet and seven sands were encountered. All of them were unproductive except two sands. After testing, the more shallow productive sand was sealed off and the well was completed at the deeper sand. A unit was created for the deeper sand effective December 1, 1962. Superior had paid Humble 31% of the cost of the drilling, pursuant to the joint operating agreement. Upon subsequently learning that it was to participate in the unit to only 13%, it demanded reimbursement of the difference from Humble. Superior subsequently filed suit against Humble for this amount.
Over a year after suit was filed, the well ceased to produce from the deeper sand and the well was sealed off at this level. Almost two years after suit was filed, the well was recompleted in the more shallow sand and a new unit for production from that sand was established by the Commissioner. By supplemental order, a formula was established for the participation and production from the second unit. The dispute thus involved a determination of the respective rights of the parties under the joint operating agreement and the two subsequent unitization orders.
The defendants filed exceptions to the jurisdiction of the court over the subject matter and to the venue of the court, arguing that the action involved a dispute over the costs and development of operations of a pool unit and that the Commissioner had primary jurisdiction over this dispute. They also filed exceptions of prematurity based on the following contentions: (1) that plaintiff had not exhausted its administrative remedy before the Commissioner of Conservation, and (2) that since a letter agreement contemplated the creation of a unit for each productive sand encountered and no units had been formed by the Commissioner for the second sand before suit was filed, the action was premature in attempting to fix the shares of the respective parties of the drilling costs allocable to the first pooled sand. The Fourth Circuit found that the District Court erred in maintaining the defendants' exceptions of lack of jurisdiction over the subject matter and lack of venue because:
"His determination of such costs amounts to no more than a finding of fact which finding is reviewable under *222 LSA-R.S. 30:12 by the District Court of East Baton Rouge Parish. The Commissioner has no jurisdiction to decide disputes such as the one before the Court. Even if, prior to the filing of this suit, the Commission had made a factual determination of the costs attributable to the Frio 6 and Marg. 1-A units and such finding had been affirmed by the District Court of East Baton Rouge Parish the dispute between the parties would not have been resolved thereby and this or a similar suit would have had to be filed in order to resolve it." Superior Oil Co. v. Humble Oil & Refining Co., La.App., 226 So.2d 565, 570.
However, the Court of Appeal upheld the trial judge's dismissal of the suit on the exception of prematurity.
After granting writs, the Supreme Court reversed the Court of Appeal's affirmance of the exception of prematurity. Superior Oil Co. v. Humble Oil & Refining Co., 257 La. 207, 241 So.2d 911 (1970). The Supreme Court's language in reversing clearly establishes Desormeaux's right to have his dispute litigated in the courts:
"There is unquestionably a serious and irreconcilable divergence of opinions between the parties as to their rights under the contract and the letter agreement of June 2, 1960, the terms of which need not be set out here in view of our appreciation of the case. This can only be resolved on the application of legal precepts and principles governing the interpretation of contracts, after a trial on the merits, during which all pertinent facts touching on the intent of the parties as reflected by their actions are shown.

"Inasmuch as this is, thus, a contract dispute pure and simple which the Commissioner cannot resolve in a cost dispute (should one develop after the rights of the parties under the contract and letter agreement have been determined following a trial on the merits) we hold that the pleas of prematurity are unfounded and will have to be overruled." (Emphasis added).
Thus, the Supreme Court held in a suit for a money judgment, a legal dispute may be resolved by the courts even though there may be a subsequent cost dispute before the Commissioner. As the Court stated, a legal dispute cannot be resolved by the Commissioner of Conservation.
The Commissioner certainly could not resolve the legal dispute between Desormeaux and Inexco in a cost hearing. Moreover, plaintiff has pointed out, that he has no quarrel with the costs attributed to the unit well. Even if there were a cost dispute, a determination of the parties' rights in this case is neither dependent upon nor underpinned by a determination of the amount of reasonable and proper costs by the Commissioner. This case, therefore, appears to be just the type of dispute which the Declaratory Judgments Act contemplates. See Louisiana Code of Civil Procedure Article 1871 and 1872.
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded to be dealt with in a manner not inconsistent with the view expressed herein. All costs of this appeal are assessed to defendant-appellee, Inexco Oil Company.
Reversed and remanded.
HOOD, J., dissents, being of the opinion that the judgment of the trial court sustaining the exceptions of prematurity is correct.
NOTES
[1] The respective positions of the litigants are revealed by the following paragraphs of Desormeaux's petition:

"14.
It is the position of petitioner, Lovic C. Desormeaux, that considering he is the owner of all of the property within the unit, that the unit is part of one contiguous tract of land, that the well produced for some nine (9) months prior to the formation of the unit; that petitioner is entitled to the proportionate part of the production attributable to the unleased acreage from September 20, 1970, the date of first production, subject to payment by petitioner of his prorata of the cost of drilling, completing and operating the well; or alternatively, considering that the well was paid out prior to the time the unit was formed, petitioner would be entitled to his prorata of the production from the date of the formation of the unit free of the payment of any of the costs of drilling and completing the well as these costs had already been recovered by Inexco Oil Company.
"15.
It is the position of Inexco Oil Company on the other hand that the unleased acreage is entitled to no part of the production prior to the creation of the unit and that the proportionate part of the well costs allocated to the unleased acreage should be paid from the production attributable to said unleased acreage accruing after the formation of the unit." (Emphasis added)