11 F.3d 1298
 William P. MILLS, III, John L. Robertson, Brenda Sue Harmon
Robertson, Orel Bridges, Jr., and Ethyl Sue
Hoffpauir Bridges,
Plaintiffs-Appellants-Cross-Appellees,
v.
DAVIS OIL COMPANY, Saturn Energy Company, Vale & Company,
Allen E. Paulson, NERCO Oil & Gas, Inc., and Exxon
Corporation,
Defendants-Appellees-Cross-Appellants.
 No. 92-5006.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 21, 1994.
 
 1
 Warren D. Rush, Rush, Rush & Calogero, Lafayette, LA, Robert E. Arceneaux, Mack E. Barham and Matthew K. Brown, Barham & Arceneaux, New Orleans, LA, for appellants.
 
 
 2
 Matthew J. Randazzo, III and F. Henri Lapeyre, Jr., Lapeyre, Terrell & Randazzo, New Orleans, LA, for Davis, et al.
 
 
 3
 E. Burt Harris, New Orleans, LA, for Exxon.
 
 
 4
 Appeal from the United States District Court for the Western District of Louisiana.
 
 
 5
 Before KING, and JOLLY, Circuit Judges, and PARKER,[1] District Judge.
 
 ROBERT M. PARKER, District Judge:
 
 6
 In this diversity action, William P. Mills, III, John L. Robertson, Brenda Sue Harmon Robertson, Orel Bridges, Jr., and Ethyl Sue Hoffpauir Bridges (hereinafter referred to collectively as "Mills") are before this Court seeking review of a district court judgment granting summary judgment to defendants, Davis Oil Company, Saturn Energy Company, Vale & Company, Allen E. Paulson, and NERCO Oil & Gas, Inc. (hereinafter "Davis"). Davis has cross appealed, seeking to change the dismissal without prejudice of Mills claims for civil penalties under La.R.S. 30:18 to dismissal with prejudice.
 
 
 7
 We reverse in part and affirm in part.
 
 FACTS
 
 8
 In 1977, Kenneth Upton purchased a 16.43 acre tract of land located in Lafayette Parish, Louisiana. In 1983, Upton mortgaged the land as collateral for a $500,000 loan from First National Bank of Lafayette ("FNB"). Later in 1983, Upton granted Louisiana Land Management ("LLM") a mineral lease on the land. Early in 1984, LLM assigned the lease to Davis Oil Company. (There is a fairly complicated history of assignments of the lease among various oil companies that has no relevance to the issues before us. All remaining interest holders will be referred to collectively as "Davis.") The lease was properly recorded.
 
 
 9
 Upton defaulted on the loan to FNB in 1984. FNB got a judgment against Upton and in execution of its judgment, obtained a writ of fieri facias. The local Sheriff seized the tract which is the subject of the suit and sold it at auction to FNB, in May 1984. Davis did not get notice of the sale and did not bid on the land.
 
 
 10
 On March 10, 1984, a Davis well located on property adjacent to the subject tract "blew out" indicating a significant hydrocarbon discovery. In September 1984, Davis gave notice that it planned to apply to the Louisiana Commissioner of Conservation (Commissioner) for the establishment of a production unit that would include the subject tract. Because Mills owned another tract nearby, he received notice of Davis' intent. In October, Mills entered into an agreement to buy the subject tract from FNB. During the ensuing negotiations on the specifics of the sale, Mills obtained a title opinion which specifically questioned the validity of the sale of the subject tract to FNB, based on the lack of notice to Davis.
 
 
 11
 On February 4, 1985, the Commissioner established a unit that included part of the subject tract, which guaranteed the tract a share in the production from the unit. On February 12, 1985 Mills purchased the tract from FNB for a price that reflected only the surface value of the tract.
 
 
 12
 On March 26, 1985, Mills made demand on Davis for a recordable release of the subject lease. Davis responded by filing an action for declaratory judgment, attempting to establish the validity of the lease. Mills brought the suit now before us in 1986 to recover damages Davis allegedly caused by refusing to provide a release of the lease. Mills also sought penalties and attorney's fees. The district court stayed this suit pending the outcome in Davis' declaratory judgment action. After lengthy litigation, the court found that the lease had been extinguished by the sheriff's sale to FNB. The holding of that companion case was appealed and affirmed earlier, and is not before us now. See Davis Oil Co. v. Mills, 873 F.2d 774 (5th Cir.1989).
 
 
 13
 After Mills prevailed in the declaratory judgment action, he filed a motion for partial summary judgment seeking to recover from Davis his share of the oil and gas revenues produced from the property. The district court granted the motion and Davis paid Mills approximately $400,000. Davis then filed its own motion for summary judgment seeking a dismissal of Mills' remaining claims for penalties, damages and attorney's fees. On August 6, 1992, the district court granted Davis' motion for summary judgment, dismissing all of Mills' claims against Davis with prejudice, except for Mills' claim for additional production revenues and Mills' claim for civil penalties under La.R.S. 30:18, which claims were dismissed without prejudice.
 
 
 14
 Mills now appeals the dismissal of his claims, and Davis appeals the district court's decision to dismiss some of Mills' claims without prejudice.
 
 STANDARD OF REVIEW
 
 15
 In this diversity case decided on summary judgment, the controlling law is that of Louisiana. Appellant's arguments challenge the district court's application of Louisiana law. We must review de novo the district court's determination of state law. Salve Regina College v. Russell, 499 U.S. 225, 238, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991) ("The obligation of responsible appellate review and the principle of a cooperative judicial federalism underlying Erie [ R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ] require that courts of appeals review the state-law determination of district courts de novo.")
 
 
 16
 The standard of review at the appellate level of a district court's grant of summary judgment requires the same analysis as employed by the trial court. See Federal Rules of Civil Procedure 56(c). Legal questions raised by a grant of summary judgment are reviewed de novo. The determination of whether there exist genuine issues of material fact, although considered de novo, requires deference to the nonmoving party. Jones v. Southern Marine & Aviation Underwriters, 888 F.2d 358, 560 (5th Cir.1989).
 
 FAILURE TO FILE OR PROVIDE A RELEASE
 
 17
 Mills' first point of error challenges the district court's denial of his claim for damages and attorney's fees for Davis' refusal to record a release of the subject lease within ninety days of Mills written demand, dated March 26, 1985. Mills' claim is bottomed on Sec. 206-209 of the Louisiana Mineral Code[2].
 
 
 18
 The district court granted summary judgment for Davis on this issue, finding that "although on first blush it may seem that damages and attorney's fees may be owed to Mills [ ] by Davis [ ], with a literal reading of the statute, however, the underlying rationale of La.R.S. 31:206, et seq. does not dictate such an award." District Court Memorandum Ruling at 10. The district court reasoned that since the Sheriff's sale that extinguished the lease was recorded in the public records, both Mills and the general public knew that the lease was extinguished and that Mills was not entitled to any further documentation under the statute.
 
 
 19
 The district court further found that since Mills knew that the title was in controversy when he purchased the property, and because the purchase price was less than the appraised value of the surface of the Subject Tract, Davis' actions cause Mills no damage.
 
 
 20
 The district court specifically declined to reach the question of whether Mills had standing to seek extinguishment of the Subject Lease and subsequent damages and attorney's fees.
 
 
 21
 La.R.S. 31:206(B) gives any person in whose favor a mineral lease has expired or been extinguished, the right to demand that the former lessee record an act evidencing the extinction or expiration or the lease in the public records. La.R.S. 31:207 provides that if the former lessee refuses to record such an act within ninety days of the lease's extinguishment, then the person in whose favor the mineral lease has expired or been extinguished may recover damages and attorney's fees he has incurred as a result of that refusal. The former owner of a mineral right other than a mineral lease is not liable for damages or attorney's fees if there is a good faith dispute as to the extinction or expiration of the right. However, the good faith defense is not available to a former mineral lessee such as Davis. Webb v. Hardage Corp., 471 So.2d 889, 894 (La.App.2d Cir.1985).
 
 
 22
 There is no dispute that Davis did not record in the public records or provide to Mills a release of the Subject Lease within the time frame allowed in the statute. We are in agreement with the district court that a literal reading of the statute indicates that Davis owes Mills damages and attorney's fees. After examining Louisiana law, we conclude that a Federal District Court cannot sidestep the literal wording of the statute and go in search of the Louisiana legislature's underlying rationale in enacting of La.R.S. 31:206, et seq.
 
 
 23
 Under Louisiana law, where the statutory language is unambiguous, inquiry into legislative intent in improper. La.Civ.Code, art. 9; Broussard v. Sears, Roebuck, & Co., 568 So.2d 225, 228 (La.App.3d Cir.1990) (When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the Legislature.)
 
 
 24
 To locate the statute's underlying rationale, the court below, looked to the comments to La.R.S. 31:206, which stated that Articles 206 through 209 are a redraft of former R.S. 30:101-102(d) and did not change the substance of the law. According to the Louisiana Supreme Court, reliance on a comment that declares that a statute "does not change the substance of the law" is not permissible where the comments are not part of the law and the plain language of the statute is clear. Ramirez v. Fair Grounds Corp., 575 So.2d 811, 813 (La.1991).
 
 
 25
 The Senate Concurrent Resolution No. 2, accompanying Act 50 of the Louisiana Legislature of 1974 which enacted the mineral code, states: "The comments under the various articles of the mineral code shall be printed in said Senate Bill No. 66, which proposes the adoption of the mineral code, but the comments shall not be considered as part of the proposed law."
 
 
 26
 Because the language of the statute is clear and the subsequent comments are not enacted into law, the district court had no basis for circumventing the plain meaning of the statute, and substituting its own view as to whether or not a release was necessary under the circumstances. The district court's reasoning that once the sheriff's sale was recorded, Davis was exempted from the provisions of La.R.S. 31:206, et seq., creates an exception that, no matter how reasonable, is simply not the law in Louisiana. Appellee's argument that La.R.S. 31:207 does not apply to a situation where a lease is extinguished by operation of law as a result of a judicial foreclosure is likewise not an exception that Louisiana law provides. Davis relies again on language from the repealed version of the law to exclude the present facts from the statute's coverage, while acknowledging that the present law does not specifically limit its coverage in this way. We find that Davis' argument in this regard lacks merit.
 
 
 27
 Davis also argues that Mills is not the proper party to bring an action for damages and attorney's fees under La.R.S. 31:207. The court below specifically declined to reach this issue. The Appellees urge the argument, apparently as an alternative basis for affirming the lower court's decision. La.R.S. 31:207 provides that if the former lessee fails to record an act evidencing the extinction of his lease within ninety days of the lease's extinguishment, he is liable to "the person in whose favor the right or the lease has been extinguished or expired for all damages resulting therefrom and for a reasonable attorney's fee." Once again referring to the former version of the statute, Davis argues that only a lessor could bring an action to recover damages and attorney's fees against Mills. The language limiting the right of action to the lessor was changed by the Louisiana Legislature to the present "person in whose favor" language. Appellee's conjecture about why the Legislature may have chosen the new language (because the new statute refers to mineral rights other than leases) is a matter of some indifference to this Court. The plain language of the statute must be our guide in determining whether Mills had standing to seek damages and attorney's fees under the mineral code.
 
 
 28
 At the time that the lease was extinguished by the sheriff's sale, FNB owned the property. FNB later sold the property to Mills, who was then subrogated, pursuant to the sales agreement, to all of FNB's rights and actions of warranty against previous owners. Davis' claim during the ensuing six year litigation that the old lease continued in force impacted the title, value and marketability of Mills' property. Mills is therefore a person in whose favor the right or the lease has been extinguished.
 
 
 29
 Finally the lower court commented, after finding that Davis had no liability to Mills, that "this court cannot see where Mills [ ] has cause to now argue Davis' [ ] actions caused damage." Appellees make much of this argument on appeal. The district court and Appellees base their position on the fact that Mills' purchase price was less than the appraised value of the surface of the property and that Mills knew at the time of purchase about the disputed lease. We are not convinced by this reasoning. Mills damages are not measured by the difference between his purchase price and the current value of the property. Rather, Mills' damages are measured by the difference between his current position and the position he would have occupied had Davis timely complied with his statutory duty.
 
 
 30
 Based on the foregoing, the lower court's grant of summary judgment for Davis on the issue of damages and attorney's fees under La.R.S. 31:206 et seq. is reversed.
 
 JURISDICTION OVER COST DISPUTES
 
 31
 Mills sought production revenues in addition to those awarded in the previous order granting partial summary judgment to Mills. Mills does not contest the calculation of production revenues, but rather questions whether certain costs are properly charged against Mills' production revenues. The court below dismissed the claim without prejudice, finding that it lacked jurisdiction to determine the issue, deferring instead to the Louisiana Commissioner of Conservation. The Court relied on La.R.S. 30:10(A)(2)(f) which provides:
 
 
 32
 In the event of a dispute relative to the calculation of unit well costs or depreciated unit well costs, the Commissioner shall determine the proper costs after notice to all interested owners and a public hearing thereon.
 
 
 33
 Mills is entitled to an administrative hearing to determine whether Davis improperly assessed certain well costs against Mills' share of production revenues. Although it is not clear that the district court lacked jurisdiction altogether, it properly declined to exercise jurisdiction over Mills' well cost dispute and deferred this matter instead to the Commissioner of Conservation. Under Louisiana law, the deference to the commissioner for an initial decision on matters within the expertise of the Department of Conservation, which is contemplated by the doctrine of primary jurisdiction, is a matter within the sound discretion of the trial court. Magnolia Coal Terminal v. Phillips Oil Co., 576 So.2d 475, 489 (La.1991) (Trial court, in deciding a remediation issue, did not abuse its discretion by refusing to defer to the Commissioner of Conservation as a matter of primary jurisdiction.) The doctrine of primary jurisdiction developed by Louisiana jurisprudence is very similar to the Federal doctrine that bears the same name. The two major considerations underlying the doctrine are the need for uniformity in various areas of regulated industry, and special administrative expertise attributable to agencies due to their intimate working associations with industries they regulate. South-West Utilities v. S. Cent. Bell Tel., 339 So.2d 425 (La.1976). The district court, sitting in diversity jurisdiction, must apply the substantive law of Louisiana, while employing Federal procedural rules. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the absence of a valid Federal Civil Rule addressing the point, the Court must determine whether a particular rule is procedural or substantive by considering the "twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The doctrine of primary jurisdiction which vests Louisiana trial courts with discretion to defer to agencies those issues within their particular expertise, would be thwarted if Louisiana litigants could come into federal court and circumvent the administrative process. Therefore, although there is no precedential guidance on this precise point, we hold that Louisiana's doctrine of primary jurisdiction is substantive and it required the lower court to exercise its discretion as if it were a Louisiana state court.
 
 
 34
 Mills first asserts that the trial court abused its discretion because his dispute with Davis extends beyond the reasonableness of Davis' unit well costs and depreciation calculation. Mills relies on case law to the effect that the Commissioner of Conservation has no authority to determine how costs are to be apportioned among working interest owners under various contracts which ignore or alter the statutory rights of the parties thereto. See, e.g., Desormeaux v. Inexco Oil Co., 277 So.2d 218 (La.App.2d Cir.1973). The record before this Court does not reveal such a dispute between Mills and Davis. Rather, the question is whether certain costs can be properly charged against Mills' interest under Louisiana law. The lower court's decision, relying on La.R.S. 30:10(A)(2)(f), that a determination of the appropriate costs should be made by the Commissioner was not an abuse of discretion.
 
 
 35
 Mills further argues that correspondence between Mills and the Commissioner in 1988 establishes that Mills exhausted his administrative remedies. In the first of those letters Mills requests that the Commissioner convene a hearing to determine the extent of Mills' right to "a substantial sum of money" being held by Davis Oil Company resulting from the payout of the subject well between 1985 and 1988. The letter went on to advise the Commissioner that Mills' opponents were taking the position that the Upton lease was still in effect and that Mills had no interest in the funds. The Commissioner denied the request for hearing, due to his policy not to inject the Commissioner's office in matters that are in litigation. The lower court found that the 1988 request and Commissioner's response had no application to the cost dispute now at issue. The record supports the lower court's determination that the 1988 request did not address the issue now before us and therefore did not serve to exhaust Mills' administrative remedies. We therefore find no abuse of discretion in the dismissal without prejudice of Mills' cost claim.
 
 MILLS RIGHT TO RECOVER CIVIL PENALTIES
 
 36
 Mills claimed approximately $11,735,000.00 in civil penalties pursuant to La.R.S . 30:18(A)(1) for alleged violations of the Louisiana Mineral Code.[3] Mills argues that La.R.S. 30:18(A)(1) grants him standing to recover civil penalties from Davis for failure to pay royalties that are required under La.R.S. 30:10(A)(3).[4] The lower court found that Mills is not a proper party to assert a claim for civil penalties, and granted summary judgment for Davis on this point.
 
 
 37
 The district court noted that the present form of the statute does not specifically state the suit must be instituted by the Commissioner, but then considered the location of the statute in relation to the chapter entitled, "Commissioner of Conservation" which clearly denotes the duties and authority of the Commissioner under the auspices of the Department of Conservation, and concluded that Mills was not a proper party to assert a claim for civil penalties under La.R.S. 30:18. We agree.
 
 
 38
 This Louisiana statute must be interpreted by considering the statute in its entirety and other Louisiana laws on the same subject matter. Hayden v. Richland Parish School Bd., 554 So.2d 164 (La.App.2d Cir.1989), writ denied 559 So.2d 124 (La.1990). (See Appendix for the text of the statutes discussed here.) La.R.S. 30:4 provides "that the commissioner has jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this Chapter." La.R.S. 30:6(F) allows any interested person the right to have the Commissioner call a hearing by making a request therefor in writing. If the Commissioner fails to make a ruling within thirty days, any interested party can compel him to do so by mandamus. La.R.S. 30:6(G) provides authority for the commissioner to impose civil penalties and order compliance. Under La.R.S. 30:12, a person aggrieved by an order of the Commissioner imposing a civil penalty may seek review in the Nineteenth Judicial District Court for East Baton Rouge Parish.
 
 
 39
 La.R.S. 30:14 specifically grants the Commissioner of Conservation authority to bring a civil action against one who violates a provision of Chapter 1 of Title 30 and provides the rules of venue for bringing such action. La.R.S. 30:16 provides that a private party such as Mills can bring civil action against a violator of the provisions of Chapter 1 of Title 30 only if the Commissioner has been requested to take action against such violator in writing, and the Commissioner has refused to do so. There is no evidence in the record showing that Mills requested the Commissioner in writing to take action against Davis for Davis' alleged violation of the statute. Even if he had, a private party is entitled only to "bring suit to prevent any or further violations, in the district court of any parish in which the commissioner could have brought suit." La.R.S. 30:16 does not provide for private parties to seek civil penalties in such an action.
 
 
 40
 La.R.S. 30:18 is titled "Penalties for violation of chapter; venue." The civil penalties, which the statute earlier allowed the Commissioner to impose, are limited to "not more than five thousand dollars a day for each day of violation and for each act of violation" by this section. Given the context in which it appears, this section on limitations of penalties does not create a private cause of action for individuals to recover penalties from those they allege have violated provisions of the Louisiana Mineral Code.
 
 
 41
 Mills argues, without authority, that the provisions of La.R.S. 30:18 allow a private party to circumvent the statutory power provided to the Commissioner, and bring private suits to recover civil penalties. The wording of the provision itself supports the conclusion that Mills was not a proper party to bring an action for penalties. By choosing to term the financial recovery "penalty," rather than restitution, compensation or indemnification, the Louisiana Legislature provided for a pecuniary exaction imposed as a punishment for violation of law by proceedings of public authority. McHugh v. Placid Oil Co., 19 So.2d 221 (La.1944).
 
 
 42
 Based on the statutory context and the wording of the provision in question, we find that the district court was correct in holding that Mills was not a proper party to exact civil penalties from Davis under La.R.S. 30:18.
 
 DISMISSAL WITH OR WITHOUT PREJUDICE
 
 43
 The district court dismissed Mills' claim for civil penalties without prejudice. Davis has cross appealed, arguing that the district court's dismissal of Mills' claim for civil penalties under La.R.S. 30:18 should have been with prejudice. Having concluded that Mills is not the proper party to bring a cause of action for such penalties, his claim should have been dismissed with prejudice. However, we hold that the effect must be that it is without prejudice so far as any proper claim that may hereafter be brought under La.R.S. 30:18. See Cleveland v. Mercantile Trust Co., 45 F.Supp. 205, 207-208 (D.Md.1942).
 
 CONCLUSION
 
 44
 The district court ruling denying, as a matter of law, Mills' claim for damages and attorney's fees as provided in Article 207 of the Louisiana Mineral Code is REVERSED.
 
 
 45
 The district court did not abuse its discretion in determining that it did not have jurisdiction over Mills' claim for additional production payments. That decision is AFFIRMED.
 
 
 46
 The district court's dismissal of Mills' claim for penalties is AFFIRMED, but REMANDED with instructions to amend the judgment so as to dismiss the claim with prejudice as it relates to Mills.
 
 APPENDIX
 
 47
 La.R.S. 30:4. Jurisdiction, duties, and powers of the assistant secretary; rules and regulations
 
 
 48
 A. The commissioner has jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this Chapter and all other laws relating to the conservation of oil or gas.
 
 
 49
 B. The commissioner shall make such inquiries as he thinks proper to determine whether or not waste, over which he has jurisdiction, exists or is imminent. In the exercise of this power the commissioner has the authority: to collect data; to make investigations and inspections; to examine properties, leases, papers, books, and records; to examine, survey, check, test, and gauge oil and gas wells, tanks, refineries, and modes of transportation; to hold hearings; to provide for the keeping of records and the making of reports; and to take any action as reasonably appears to him to be necessary to enforce this Chapter.
 
 
 50
 C. The commissioner has authority to make, after notice and hearings as provided in this Chapter, any reasonable rules, regulations, and orders that are necessary from time to time in the proper administration and enforcement of this Chapter.
 
 
 51
 La.R.S. 30:6. Hearings; notice; rules of procedures; emergency; service of process; public records; request for hearings; orders and compliance orders
 
 
 52
 A. The commissioner shall prescribe the rules of order or procedure in hearings or other proceedings before him under this Chapter.
 
 
 53
 B. No rule, regulation, order, or change, renewal, or extension thereof, shall, in the absence of an emergency, be made by the commissioner under the provisions of this Chapter except after a public hearing upon at least ten days' notice given in the manner and form prescribed by him. This hearing shall be held at a time and place and in the manner prescribed by the commissioner. The commissioner, in his discretion, may designate a member of his staff to conduct public hearings on his behalf. Any person having an interest in the subject matter of the hearing shall be entitled to be heard. Whenever any application shall be made to the commissioner of conservation for creation, revision, or modification of any unit or units for production of oil or gas, or for adoption of any plan for spacing of wells or for cycling of gas, pressure maintenance or restoration, or other plan of secondary recovery, the applicant shall be required to file with the application two copies of a map of such unit or units or well spacing pattern or two explanations of such plan of cycling, pressure maintenance or restoration, or other secondary recovery program and at least thirty days' notice shall be given of the hearings to be held thereon, in the manner prescribed by the commissioner of conservation and a copy of such plat or explanation of program shall remain on file in the office of conservation in Baton Rouge and in the office of the district manager of the conservation district in which the property is located, and be open for public inspection, at least thirty days prior to such hearing.
 
 
 54
 C. If the commissioner finds an existing emergency which in his judgment requires the making, changing, renewal, or extension of a rule, regulation, or order without first having a hearing, the emergency rule, regulation, or order shall have the same validity as if a hearing had been held after due notice. The emergency rule, regulation, or order shall remain in force no longer than fifteen days from its effective date. In any event, it shall expire when the rule, regulation, or order made after notice and hearing with respect to the same subject matter becomes effective.
 
 
 55
 D. Should the commissioner elect to give notice by personal service, it may be made by any officer authorized to serve process or any agent of the commissioner in the same manner as is provided by law for the service of citation in civil actions in the district courts. Proof of the service by an agent shall be by the affidavit of the person making it.
 
 
 56
 E. All rules, regulations, and orders made by the commissioner shall be in writing and shall be entered in full by him in a book kept for that purpose. This book shall be a public record and shall be open for inspection at all times during reasonable office hours. A copy of a rule, regulation, or order, certified by the commissioner shall be received in evidence in all courts of this state with the same effect as the original.
 
 
 57
 F. Any interested person has the right to have the commissioner call a hearing for the purpose of taking action in respect to a matter within the jurisdiction of the commissioner by making a request therefor in writing. Upon receiving the request the commissioner shall promptly call a hearing. After the hearing, and with all convenient speed and in any event within thirty days after the conclusion of the hearing the commissioner shall take whatever action he deems appropriate with regard to the subject matter. In the event of failure or refusal of the commissioner to issue an order within the period of thirty days, he may be compelled to do so by mandamus at the suit of any interested person.
 
 
 58
 G. Notwithstanding the provisions of Subsections B and C to the contrary, the commissioner, upon determining that a violation of this Chapter or the regulations adopted hereunder has occurred, may impose a civil penalty as provided in this Chapter. Additionally, upon determining that a violation of this Chapter or the regulations adopted hereunder has occurred, the commissioner may issue an order requiring compliance. Any such order issued shall state, with reasonable specificity, the nature of the violation, any cessation of activities or affirmative operations required to achieve compliance, and a time limit within which compliance with the order must be achieved. Noncompliance with any such order to comply shall constitute a violation of this Chapter, and the commissioner may impose a civil penalty for such violation. Any person subjected to a civil penalty shall have the right to a public hearing if requested in writing, which written request shall suspend the imposition of the penalty until final action is taken by the commissioner after hearing.
 
 
 59
 La.R.S. 30:10(A)(3). Agreements for drilling units; pooling interests; terms and conditions; expenses
 
 
 60
 (3) If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.
 
 
 61
 Should the owners of separate tracts embraced within a drilling unit fail to agree upon the pooling of the tracts and the drilling of a well on the unit, and should it be established by final and unappealable judgment of court that the commissioner is without authority to require pooling as provided for in Subsection A, then, subject to all other applicable provisions of this Chapter, the owner of each tract embraced within the drilling unit may drill thereon. The allowable production therefrom shall be such proportion of the allowable for the full unit as the area of the separately owned tract bears to the full drilling unit.
 
 
 62
 La.R.S. 30:12. Court review and injunction; venue; procedure; burden of proof
 
 
 63
 A. (1) A person who is aggrieved by any law of this state with respect to conservation of oil or gas, or both, or by a provision of this Chapter, or by a rule, regulation, or order made by the assistant secretary of the office of conservation hereunder, or by an act done or threatened hereunder, and who has exhausted his administrative remedy, may obtain court review by a suit for injunction or judicial review against the assistant secretary as defendant.
 
 
 64
 (2) Suit for review shall be instituted in the district court of the parish in which the principal office of the assistant secretary is located and must be brought within sixty days of the administrative action that is the subject of the suit. In cases of judicial review of adjudication proceedings, the sixty days shall begin to run after mailing of notice of the final decision or order, or if a rehearing is requested within sixty days after the decision thereon.
 
 
 65
 B. (1) Judicial review of adjudication proceedings before the assistant secretary may be obtained whether or not the plaintiff has applied for a rehearing. A preliminary, procedural, or intermediate action or ruling by the assistant secretary is immediately reviewable if review of the final decision of the assistant secretary would not provide an adequate remedy and would inflict irreparable injury.
 
 
 66
 (2) Within thirty days after service of the petition or within further time allowed by the court, the assistant secretary shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under review. By stipulation of all parties to the review proceedings, the record may be shortened. A party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional costs. The court may require or permit subsequent corrections or additions to the record.
 
 
 67
 (3) If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the assistant secretary, the court may order that the additional evidence be taken before the assistant secretary upon conditions determined by the court. The assistant secretary may modify his findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court.
 
 
 68
 (4) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the assistant secretary not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.
 
 
 69
 (5) The court may affirm the decision of the assistant secretary or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:(a) In violation of constitutional or statutory provisions;
 
 
 70
 (b) In excess of the statutory authority of the agency;
 
 
 71
 (c) Made upon unlawful procedure;
 
 
 72
 (d) Affected by other error of law;
 
 
 73
 (e) Arbitrary or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
 
 
 74
 (f) Manifestly erroneous in view of the reliable, probative, and, substantial evidence on the whole record. In the application of the rule, where the assistant secretary has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the assistant secretary's determination on credibility issues.
 
 
 75
 C. (1) Any suit for an injunction brought under this Section shall be tried summarily, and the attorney representing the assistant secretary may have the case set for trial after ten days' notice to the plaintiff or his attorney of record.
 
 
 76
 (2) The burden of proof shall be upon the plaintiff, and all pertinent evidence with respect to the validity or reasonableness of the order of the assistant secretary complained of shall be admissible. The law, the provision of this Chapter, or the rule, regulation, or order complained of shall be taken as prima facie valid. This presumption shall not be overcome in connection with any application for injunctive relief, including a temporary restraining order, by verified petition or affidavit of or in behalf of the applicant.
 
 
 77
 D. The right of appeal shall lie as hereinafter set forth in this Chapter.
 
 
 78
 La.R.S. 30:13. Temporary restraining order or injunction; notice and hearing; bond
 
 
 79
 A. No temporary restraining order or injunction shall be granted against the commissioner of conservation, the attorney general, or any agent, employee, or representative of the commissioner restraining the commissioner, or any of his agents, employees, or representatives, or the attorney general, from enforcing a statute of this state relating to conservation of oil and gas, or any of the provisions of this Chapter, or any rule, regulation, or order made hereunder, except after due notice to the commissioner, and to all other defendants, and after a hearing. It shall be clearly shown to the court that the act done or threatened is without sanction of law, or that the provisions of this Chapter, or the rule, regulation, or order complained of, is invalid, and that, if enforced against the complaining party, will cause an irreparable injury. The nature and extent of the probable invalidity of the law, or provision of this Chapter, or of any rule, regulation, or order thereunder involved in the suit shall be recited in the order or decree granting the temporary relief, as well as a clear statement of the probable damage relied upon by the court as justifying temporary injunctive relief.
 
 
 80
 B. No temporary injunction against the commissioner, or the department of conservation, or its agents, employees, or representatives, or the attorney general, shall become effective until the plaintiff shall execute a bond in an amount and upon such conditions as the court directs.
 
 
 81
 La.R.S. 30:14. Suit by commissioner for violation of law; venue; relief obtainable
 
 
 82
 Whenever it appears that a person is violating or is threatening to violate a law of this state with respect to the conservation of oil or gas, or both, or a provision of this Chapter, or a rule, regulation, or order made thereunder, the commissioner shall bring suit to restrain that person from continuing the violation or from carrying out the threat.
 
 
 83
 Venue shall be in the district court in the parish of the residence of any one of the defendants or in the parish where the violation is alleged to have occurred or is threatened.
 
 
 84
 In this suit, the commissioner may obtain injunctions, prohibitory and mandatory, including temporary restraining orders and preliminary injunctions, as the facts warrant, including, when appropriate, injunctions restraining a person from moving or disposing of illegal oil, illegal gas, or an illegal product. Any or all of these illegal commodities may, in the court's discretion, be ordered impounded or placed under the control of an agent appointed by the court.
 
 La.R.S. 30:15. Appeal
 
 85
 In proceedings brought under authority of, or for the purpose of contesting the validity of, a provision of this Chapter, or of an oil or gas conservation law of this state, or of a rule, regulation, or order issued thereunder, appeals may be taken in accordance with the general laws relating to appeals. In appeals from judgments or decrees in suits to contest the validity of a provision of this Chapter, or a rule or regulation of the commissioner hereunder, the appeals when docketed in the proper appellate court shall be placed on the preference docket of the court and may be advanced as the court directs.
 
 
 86
 La.R.S. 30:16. Suit by party in interest upon commissioner's failure to sue
 
 
 87
 If the commissioner fails to bring suit within ten days to restrain a violation as provided in R.S. 30:14, any person in interest adversely affected by the violation who has notified the commissioner in writing of the violation or threat thereof and has requested the commissioner to sue, may bring suit to prevent any or further violations, in the district court of any parish in which the commissioner could have brought suit. If the court holds that injunctive relief should be granted, the commissioner shall be made a party and shall be substituted for the person who brought the suit and the injunction shall be issued as if the commissioner had at all times been the complaining party.
 
 
 88
 La.R.S. 30:18. Penalties for violation of chapter; venue
 
 
 89
 A. (1) Whoever violates a provision of this Chapter, or a rule, regulation, or order of the commissioner made hereunder, shall be subject to a civil penalty of not more than five thousand dollars a day for each day of violation and for each act of violation.
 
 
 90
 (2) Whoever knowingly and willfully violates a provision of this Chapter, or a rule, regulation, or order of the commissioner made hereunder, shall be deemed guilty of a misdemeanor and, upon conviction by a court of competent jurisdiction, shall be fined not more than five thousand dollars for each day of violation and for each act of violation, if a penalty for the violation is not otherwise provided in this Chapter.
 
 
 91
 (3) Notwithstanding any provisions of this Section to the contrary, whoever violates the provisions of R.S. 30:4(C)(16) or the rules, regulations or orders of the commissioner made thereunder, and who is disposing or has disposed of hazardous wastes identified and designated as such by the department under the provisions of R.S. 30:2173 may be liable for a civil penalty of not more than twenty-five thousand dollars for each day of violation and for each act of violation.
 
 
 92
 (4) Whoever willfully and knowingly violates the provisions of R.S. 30:4(C)(16) or the rules, regulations and orders of the commissioner made thereunder in the disposal of hazardous wastes identified and designated as such by the department under the provisions of R.S. 30:2173 shall be fined not more than twenty-five thousand dollars per day of violation and costs of prosecution or imprisoned for not more than one year, or both, and in such instances the prosecution may be instituted by the district attorney having criminal jurisdiction.
 
 
 93
 (5) Any purchaser of oil and gas from any owner who violates a provision of this Chapter, or a rule, regulation, or order of the commissioner, may be ordered by the commissioner to hold in escrow any monies allocated to such owners. Monies allocated to royalty owners and overriding royalty owners shall not be affected by this Paragraph.
 
 
 94
 B. Whoever knowingly and wilfully aids or abets a person in the violation of law of this state relating to the conservation of oil or gas, or the violation of a provision of this Chapter, or any rule, regulation, or order make thereunder, shall be subject to the same penalties provided herein for the principal violator.
 
 
 
 [1]
 Chief Judge of the Eastern District of Texas, sitting by designation
 
 
 [2]
 PART 1. DEMAND FOR AUTHORIZATION TO CANCEL EXTINGUISHED MINERAL RIGHT FROM PUBLIC RECORDS
 Sec. 206. Obligation of owner of expired mineral right to furnish recordable act evidencing extinction or expiration of right; mineral lease
 A. Except as provided in Paragraph B of this Article, when a mineral right is extinguished by the accrual of liberative prescription, expiration of its term, or otherwise, the former owner shall, within thirty days after written demand by the person in whose favor the right has been extinguished or terminated, furnish him with a recordable act evidencing the extinction or expiration of the right.
 B. When a mineral lease is extinguished prior to the expiration of its primary term, the former lessee shall, within ninety days after the extinguishment, record an act evidencing the extinction or expiration of the lease in the official record of all parishes wherein the lease is recorded.
 Sec. 207. Effect of failure to furnish act evidencing extinction or expiration of right; mineral lease
 If the former owner of the extinguished mineral right fails to furnish the required act within thirty days of receipt of the demand or if the former lessee of a mineral lease fails to record the required act within ninety days of its extinguishment prior to the expiration of its primary term, he is liable to the person in whose favor the right or the lease has been extinguished or expired for all damages resulting therefrom and for a reasonable attorney's fee incurred in bringing suit.
 Sec. 208. Effect of good faith dispute as to extinction or expiration of right
 The former owner of a mineral right other than a mineral lease is not liable for damages or attorney's fees under Article 207 if there is a good faith dispute as to whether prescription has accrued, the term of the right has expired, or it has been otherwise extinguished.
 Sec. 209. Applicability to demand for dissolution of mineral lease
 The right to secure damages and attorney's fees under Article 207 is applicable also to a demand for dissolution of a mineral lease for failure to comply with its obligations.
 
 
 [3]
 La.R.S. 30:18(A)(1) states in pertinent part:
 Whoever violates a provision of this Chapter, or a rule, regulation, or order of the Commissioner made hereunder, shall be subject to a civil penalty of not more than $5,000.00 a day for each violation and for each act of violation.
 
 
 [4]
 La.R.S. 30:10(A)(3) provides:
 If there is included in any unit created by the Commissioner of Conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of the production within 180 days of such sale.